**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATAO YOKENO, AKA Eddie M. Yokeno,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>SAWAKO SEKIGUCHI, AKA Sawako S. Lai; EMIL LAI; JOHN DOES, 1-10,<br>*Defendants-Appellees*. | No. 11-17196<br><br>D.C. No.<br>1:09-cv-00020<br><br>OPINION |

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge,
Presiding

Argued and Submitted
November 4, 2013—Pasadena, California

Filed April 15, 2014

Before: Diarmuid F. O'Scannlain, Susan P. Graber,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

# SUMMARY[*]

### Jurisdiction

The panel held that this court and the District Court of Guam lacked jurisdiction to decide this case exclusively between aliens, and vacated the district court's summary judgment in favor of Sawako Sekiguchi and Emil Lai and remanded with instructions to remand the case to the Superior Court of Guam.

Plaintiff Matao Yokeno is an alien admitted to the United States for permanent residence, living in Guam. Defendants Lai, a British Overseas Citizen, and Sekiguchi, a Japanese citizen, both live in Japan, and they removed the case to the District Court of Guam based on diversity of citizenship.

The Organic Act of Guam conferred upon the District Court of Guam the same diversity jurisdiction afforded to Article III courts. From May 18, 1989 to January 5, 2012, the "deeming clause" amended 28 U.S.C. § 1332 to provide that for diversity jurisdiction "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." This case was removed to the District Court of Guam in 2011.

The panel held that the deeming clause purported to confer jurisdiction in cases such as this one by supplying constitutionally required minimal diversity through deemed citizenship. The panel held, however, that the Organic Act

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

precluded the court from deciding the merits of this dispute between aliens because the Organic Act conferred diversity jurisdiction upon the District Court of Guam reaching only as far as the diversity jurisdiction afforded to Article III courts. The panel concluded that because the U.S. Constitution did not supply diversity jurisdiction to Article III courts in suits between aliens, the jurisdiction afforded to the federal court in Guam must also, under the Organic Act, be so limited.

## COUNSEL

Andrew B. Compton, University of Arizona Pro Bono Appellate Project, Tucson, Arizona, argued the cause for the Appellant. With him on the briefs were Willie Jordan-Curtis, Ph.D., J.D., Matthew J. Palmer, David C. Potts, and Michael R. Shumway, University of Arizona Pro Bono Appellate Project, Tucson, Arizona.

Carlos L. Taitano, Taitano and Taitano LLP, Tamuning, Guam, argued the cause for the Appellees and filed the briefs.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the federal court in Guam has jurisdiction in disputes exclusively between aliens.

### I

Matao Yokeno sued Emil Lai and Sawako Sekiguchi in the Superior Court of Guam, asserting claims arising from

alleged breaches of fiduciary duty in the course of the parties' several business ventures. Sekiguchi and Lai removed the case to the District Court of Guam based on diversity of citizenship.

Yokeno is an alien admitted to the United States for permanent residence, living in Guam.[1] Lai, a British Overseas Citizen, and Sekiguchi, a Japanese citizen, both live in Japan. The district court did not examine its jurisdiction and neither party objected to its exercise based on diversity of citizenship. The district court granted summary judgment on the merits, in favor of Sekiguchi and Lai, and Yokeno timely appealed.

Yokeno now contests subject matter jurisdiction for the first time, contending that no diversity of citizenship exists in a dispute between aliens. He urges us to dismiss the appeal and to vacate the district court's judgment with instructions to remand to the Superior Court of Guam. Sekiguchi and Lai maintain that diversity jurisdiction exists but instead, curiously, move to dismiss this appeal based on res judicata.[2]

---

[1] We use the term "alien" in this opinion to refer to a foreign national.

[2] Sekiguchi and Lai move to dismiss the appeal based on res judicata. They contend (and are seemingly satisfied) that the Superior Court of Guam has previously decided the claims at issue in this case, precluding their further litigation.

We "generally may not rule on the merits of a case without first determining that [we have] jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). The Supreme Court has defined certain exceptions to this rule, supplying discretionary "leeway to choose among threshold grounds for denying audience to a case on the merits." *Id.* at 431 (internal

## II

We deal first with Yokeno's jurisdictional challenge. We have an independent obligation to determine our jurisdiction, *see Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en banc), and we consider Yokeno's objection to subject matter jurisdiction even though he raises it for the first time on appeal, *see Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1202 (9th Cir. 2007).

## A

Article III of the United States Constitution extends the judicial power to controversies "between Citizens of different States . . . and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. Const. art. III, § 2, cl. 1. This clause, the constitutional source of our diversity jurisdiction, supplies jurisdiction even where only minimal diversity of citizenship is present. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31 (1967). In the case of litigation involving an alien, a state or a citizen of a state must be a party. *Jackson v. Twentyman*, 27 U.S. (2 Pet.) 136, 136 (1829); *Hodgson v. Bowerbank*, 9 U.S. (5 Cranch) 303, 304 (1809); *Kavourgias v. Nicholaou Co.*, 148 F.2d 96, 97 (9th Cir. 1945).

---

quotation marks and citation omitted). Neither the Supreme Court nor we have previously identified res judicata as such a "threshold ground," and we decline to do so in this case.

Unlike the Constitution, the diversity statute, 28 U.S.C. § 1332,**[3]** requires complete diversity of citizenship. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). We have repeatedly confirmed the application of this rule in alienage cases, refusing to hear disputes between aliens for lack of statutory jurisdiction even when a citizen party—and thus constitutionally required minimal diversity—is present. *See Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994); *Craig v. Atl. Richfield Co.*, 19 F.3d 472, 476 (9th Cir. 1994); *Faysound Ltd. v. United Coconut Chems., Inc.*, 878 F.2d 290, 294 (9th Cir. 1989).

Because this is an appeal from the District Court of Guam, we also consider the unique nature of its jurisdiction. That district court is not an Article III court; it was created by the Organic Act of Guam, *see* 48 U.S.C. §§ 1421–1421k-1, pursuant to Article IV of the Constitution. *See Chase Manhattan Bank (Nat'l Ass'n) v. S. Acres Dev. Co.*, 434 U.S. 236, 236–37 (1978) (per curiam). The Organic Act of Guam confers upon the District Court of Guam the same diversity jurisdiction afforded to Article III courts:**[4]** "The District Court

---

**[3]** The statute provides that "[t]he district courts shall have original jurisdiction of all civil actions . . . between (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state . . . ; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or different States." 28 U.S.C. § 1332(a).

**[4]** The Organic Act also confers upon the District Court of Guam certain other specific areas of jurisdiction, including, for example, jurisdiction with respect to the "Guam territorial income tax." *See* 26 U.S.C. § 7441; 48 U.S.C. §§ 1421i(h)(1), 1424(b).

of Guam shall have the jurisdiction of a district court of the United States, including, but not limited to, the diversity jurisdiction provided for in [28 U.S.C. § 1332], and that of a bankruptcy court of the United States." 48 U.S.C. § 1424(b).

B

In 1988,[5] Congress amended § 1332 to include the following clause, known as the "deeming clause":

> For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.[6]

Pub. L. No. 100–702, § 203(a), 102 Stat. 4642, 4646 (1988). In 2011, but after this case was removed to the District Court of Guam, Congress again amended § 1332 to delete the deeming clause.[7]

On its face, the deeming clause would seem to confer jurisdiction in cases, like this one, between a resident alien plaintiff and non-resident alien defendants, where neither

---

[5] The 1988 amendment to § 1332 became effective May 18, 1989. *See* Pub. L. No. 100–702, § 203(b), 102 Stat. 4642, 4646 (1988).

[6] Because at all relevant times the diversity statute defined the word "States" to include the Territories, we consider Guam to be a "State" for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(e).

[7] The 2011 amendment to the statute, which deleted the deeming clause, became effective January 6, 2012. *See* Pub. L. No. 112–63, §§ 101, 105(a), 125 Stat. 758, 758, 762 (2011).

constitutional nor statutory jurisdiction would otherwise exist. This case requires us to determine the effect of the deeming clause on the citizenship of a resident alien suing solely alien defendants—a question of first impression.

### III

Sekiguchi and Lai contend that the district court properly exercised jurisdiction in this case because it is an Article IV court, not an Article III court. The Organic Act itself makes clear, however, that the diversity jurisdiction of the District Court of Guam is coextensive with the diversity jurisdiction of an Article III district court. *See* 48 U.S.C. § 1424(b).[8] The Organic Act does not purport to supply the District Court of Guam with jurisdiction exceeding that of an Article III district court. Instead, it identifies the diversity statute as the source of one aspect of such jurisdiction. The question before us is whether the 2011 version of 28 U.S.C. § 1332 comports with constitutional limits on the jurisdiction of an Article III court—the same jurisdiction the Organic Act confers upon the District Court of Guam.

### IV

### A

Statutory interpretation begins with the text of the statute. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

---

[8] Sekiguchi and Lai do not contend that this case presents a federal question. Nor would such an argument make sense, as a case does not pose a federal question simply by virtue of the fact that it arises under Guam law. *See Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1091–92 (9th Cir. 2002).

"Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms, for 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 964 v. BF Goodrich Aerospace Aerostructurers Grp.*, 387 F.3d 1046, 1051 (9th Cir. 2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)) (citation and internal quotation marks omitted).  We do not look at statutory language in isolation, but consider "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Only if this approach leaves or reveals ambiguity may we turn to extrinsic evidence such as legislative history. *See Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002); *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98–99 (1991); *R.R. Comm'n of Wis. v. Chi., Burlington, & Quincy R.R. Co.*, 257 U.S. 563, 589 (1922) ("Committee reports and explanatory statements of members in charge made in presenting a bill for passage . . . are only admissible to solve doubt and not to create it." (citations omitted)); *United States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004).

Whenever possible, federal statutes are construed "'to avoid serious doubt of their constitutionality.'" *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011) (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986)).  The avoidance canon, however, "'does not give [us] the prerogative to ignore the legislative will in order to avoid constitutional adjudication.'" *Id.* (alteration in original) (quoting *Schor*, 478 U.S. at 841).

B

The plain language of the deeming clause instructs us to treat Yokeno, a permanent resident alien, as a citizen of Guam for purposes of determining statutory diversity jurisdiction. To "deem" is "[t]o treat (something) as if (1) it were really something else or (2) it has qualities that it does not have." Black's Law Dictionary (9th ed. 2009); *see also* 2 Oxford English Dictionary (Compact ed. 1971) (defining "to deem" as "to judge, conclude, think, consider, hold"). According to the text, we should regard Yokeno not as an alien but as a citizen of Guam, and statutory diversity jurisdiction should lie in his dispute with alien defendants. In other words, the deeming clause purports to confer statutory jurisdiction in this suit between aliens where neither constitutional nor statutory jurisdiction would otherwise exist.

Cases and commentators, however, have suggested that, notwithstanding the plain language, the statute might be unconstitutional in the circumstances presented here because it would exceed the constitutional requirement of minimal diversity as well as the longstanding rule of complete diversity. *See, e.g.*, *Saadeh v. Farouki*, 107 F.3d 52, 58 (D.C. Cir. 1997) ("A literal reading of the 1988 amendment to § 1332(a) would produce an odd and potentially unconstitutional result."); *Singh v. Daimler-Benz AG*, 9 F.3d 303, 311 (3d Cir. 1993) (noting "the potential unconstitutional application of the deeming provision" when "a permanent resident alien sues as the sole defendant either a permanent resident alien domiciled in another state or a nonresident alien"); Charles A. Wright *et al.*, 13B Federal Practice and Procedure § 3604, at 77 (Supp. 1992); David D. Siegel, *Changes in Federal Jurisdiction and Practice under the New Judicial Improvements and Access to Justice Act*,

123 F.R.D. 399, 408–09 (1989) (noting, in discussing the deeming clause, that "[t]he jurisdictional outer limits set forth in § 2 of Article III of the Constitution don't include a jurisdictional basis consisting only of alien versus alien").

C

Three of our sister circuits have interpreted the deeming clause. None faced, as we do, a case in which the clause would purport to supply statutory jurisdiction in excess of that allowed by Article III—though all imply that conferring jurisdiction in a suit between aliens would be impermissible. That position appears to be the beginning and the end of the case law consensus.

1

The Third Circuit, in *Singh*, held that diversity jurisdiction existed by virtue of the deeming clause in a suit between a permanent resident alien living in Virginia and two defendants—one alien and one corporate citizen of Delaware and New Jersey. *See* 9 F.3d at 312. In *Singh*, the deeming clause supplied complete diversity of citizenship—satisfying the requirements for statutory jurisdiction—through the deemed Virginia citizenship of the permanent resident alien. Yet the court was not required to confront the question before us—whether the deeming clause may supply statutory jurisdiction without the constitutionally requisite minimal diversity. Constitutional jurisdiction nevertheless existed without invoking the deeming clause because the alien plaintiff was diverse from the American corporate defendant. *See id.*

The second of our sister circuits to interpret the clause reached a different result. Disregarding the text of the deeming clause, the District of Columbia Circuit held that a permanent resident alien retains his national citizenship for purposes of determining diversity jurisdiction. *See Saadeh*, 107 F.3d at 55, 61. To avoid addressing constitutional jurisdiction even by implication, the court refused to interpret the deeming clause as conferring statutory jurisdiction— through complete diversity of citizenship—in a suit between an alien on one side and both aliens and permanent resident aliens on the other. *See id.*

Finally, the Seventh Circuit, in *Intec USA, LLC v. Engle*, held that by virtue of the deeming clause, permanent resident aliens are citizens of both their native country and their state of residence for diversity purposes. 467 F.3d 1038, 1043 (7th Cir. 2006). Therefore, no complete diversity of citizenship— that is, no statutory jurisdiction—existed in a suit between alien defendants and a North Carolina limited liability corporation deemed to have two citizenships because one of its members was a New Zealand citizen permanently residing in North Carolina. *Id.* at 1044.

2

Despite their differences, the cases are consistent in an important way: Each recognizes that invoking the deeming clause to supply minimal diversity of citizenship where it would not otherwise exist, thereby exceeding constitutional jurisdiction, is constitutionally problematic. *See Saadeh*, 107 F.3d at 58; *Singh*, 9 F.3d at 311; *see also Intec*, 467 F.3d at 1041, 1044.

The cases divide on other fronts. *Singh* and *Saadeh* both read the statute to be unambiguous, as do we. The statute instructs us to regard only Yokeno's deemed citizenship of Guam, not his native citizenship. *See Saadeh*, 107 F.3d at 58; *Singh*, 9 F.3d at 306.

*Intec*, on the other hand, considers the statute to be ambiguous because it does not specify whether an alien should be deemed a citizen of his state of domicile exclusively or, in addition, his native country. *Intec*, 467 F.3d at 1042. Faced with this ambiguity, *Intec* considered both citizenships to be relevant to the diversity determination. *Id.*

*Intec*'s interpretation is both unavailable to us and unpersuasive. Our precedent directs us to consider only the American citizenship of a dual citizen for purposes of determining diversity. *See Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992). And because deemed American citizenship was not necessary to supply constitutional jurisdiction in *Intec*, the case continues to press the question whether deemed citizenship suffices to confer minimal diversity for constitutional purposes. *See Intec*, 467 F.3d at 1041.

*Intec* presents an unpersuasive answer to such question. By directing that a permanent resident alien "shall be deemed a citizen of the State in which such alien is domiciled," the statute counsels us to consider Yokeno exclusively a citizen of Guam. Had Congress wished to instruct us otherwise, it could have done so. *See, e.g.*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 454 (2002); *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 (9th Cir. 2010). A corporation, for example, is expressly "deemed to be a citizen of every State

and foreign state by which [they have] been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). As to aliens, however, Congress identified only the state of residence as the relevant citizenship for diversity purposes. Indeed, it is only *Intec*'s proposed alternative reading of the statute that requires us to add language to its text, by interpreting it to provide that a permanent resident alien "shall be deemed a citizen of the State in which [he] is domiciled" *in addition to his native citizenship*.

3

Although only *Intec* found the deeming clause to be ambiguous, all three courts nevertheless reviewed the provision's legislative history in discussing its meaning. *See Intec*, 467 F.3d at 1042–43; *Saadeh*, 107 F.3d at 58–60; *Singh*, 9 F.3d at 306–08.

*Singh* noted that such history in this case is "scant." 9 F.3d at 308. The diversity statute was amended to include the deeming clause as part of the 1988 Judicial Improvements and Access to Justice Act (the "Bill"), Pub. L. No. 100-702, 102 Stat. 4642 (1988). *Singh* reasons that, while the House Report—which was written before the deeming clause was inserted in the Bill—expresses concern for the "delay caused by rising caseloads," such concerns were not dispositive. *See* 9 F.3d at 307 (citing H.R. Rep. No. 100–889, at 23 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 5984). And while the House Report does not address the deeming clause, the court reasoned, there is no Senate Report. *Id.* at 308. Moreover, according to *Singh*, the final version of the Bill—an "omnibus court reform bill"—stepped back from an earlier proposal in the House to eliminate diversity jurisdiction entirely. *See id*

at 306–07 (citing 134 Cong. Rec. 31,049 (1988)).  The court thus refused to set aside the text, having discerned no congressional directive limiting the statute's application to suits between neighbors.  *See id.* at 310.

*Saadeh* and *Intec* disagree with *Singh* most prominently about the weight to afford this legislative history.  *Saadeh* considered the deeming clause to comport with the "general congressional effort to reduce diversity jurisdiction" in the Bill and found that such effort, combined with the potentially unconstitutional application of the clause, justified setting aside the text altogether.  *See* 107 F.3d at 60–61.  *Saadeh* also relied on observations made by the Judicial Conference and introduced into the Congressional Record to the effect that diversity should not lie in a suit between two neighbors solely on account of one's status as a permanent resident alien.  *See id.* at 58–59.  *Intec*, too, credited this explanation for the deeming clause, but admitted that the text may have "unanticipated effects at the fringes."  *Intec*, 467 F.3d at 1044.

While we do not afford the legislative history even the significance the *Singh* court did, *Singh*'s conclusion is nevertheless most faithful to the text.  The text is plain, and we are required to apply it according to its terms.  *BF Goodrich*, 387 F.3d at 1051.  We do not agree with *Saadeh* that the statute must be interpreted always to restrict diversity jurisdiction.  *See* 107 F.3d at 60.  The Bill's structure belies the conclusion that we should regard restriction of diversity jurisdiction as its primary purpose, defeating any other potential effects.  It was an omnibus Bill, addressing numerous topics in addition to the diversity jurisdiction of the federal courts—for example, the Federal Judicial Center Foundation, the Rules Enabling Act, the jurisdiction of the

Federal Circuit over interlocutory appeals, arbitration in disputes before federal courts, the Jury Selection and Service Act of 1968, and a number of other miscellaneous items. And even if we were to consider the Bill's history, which we do not, such history does not preclude the possibility that the Bill Congress passed into law might have effects outside its sponsors' express contemplation. *See Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 115 (1988) ("It is not the law that a statute can have no effects which are not explicitly mentioned in the legislative history.").

## D

Whether or not Congress intended to confer jurisdiction in cases like the one before us by supplying constitutionally required minimal diversity through deemed citizenship, the deeming clause purports to do so. The Organic Act, however, precludes us from deciding the merits of this dispute between aliens because it confers diversity jurisdiction upon the District Court of Guam reaching only as far as the diversity jurisdiction afforded to Article III courts. And to determine the diversity jurisdiction of an Article III court, as Chief Justice Marshall instructed, we must "[t]urn to the article of the [C]onstitution of the United States, for the statute cannot extend the jurisdiction beyond the limits of the [C]onstitution." *Hodgson v. Bowerbank*, 9 U.S. (5 Cranch) 303, 303 (1809). Because the Constitution does not supply diversity jurisdiction to Article III courts in suits between aliens, the jurisdiction afforded to the federal court in Guam must also, under the Organic Act, be so limited.

V

Both we and the District Court of Guam lack jurisdiction to decide this dispute exclusively between aliens. We therefore **VACATE** the District Court of Guam's summary judgment in favor of Sekiguchi and Lai and **REMAND** with instructions to remand the case to the Superior Court of Guam.**[9]**

Sekiguchi and Lai's pending motion to dismiss the appeal as res judicata is **DENIED.**

**VACATED AND REMANDED WITH INSTRUCTIONS.**

---

**[9]** Although we do not address the underlying merits, Yokeno has prevailed on the substance of his appeal in securing vacatur of the judgment against him. We therefore award costs on appeal to Yokeno. *See* Fed. R. App. P. 39(a)(4).