Partial Concurrence and Partial Dissent by Judge N.R. SMITH
OPINION
CALLAHAN, Circuit Judge:
Securities Exchange Act Section 19(d)(2) authorizes the Securities and Exchange Commission (the Commission) to review any “final disciplinary sanction” imposed by a registered securities industry self-regulatory organization, including the Financial Industry Regulatory Authority (FINRA). 15 U.S.C. § 78s(d)(2). This case *1062 requires us to decide whether the Commission’s review authority ■ under Section 19(d)(2) is limited to final disciplinary sanctions that remain “live.” The Commission interpreted Section 19(d)(2) to include a live-sanction requirement in dismissing petitioner Sharemaster’s application for review of a disciplinary sanction imposed by FINRA. We hold that Commission’s interpretation of Section 19(d)(2) is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, we conclude that the Commission’s decision that a $1,000 penalty that FINRA imposed on Sharemaster is not a “live” sanction capable of redress is unreasonable and inconsistent with applicable law. We therefore grant Sharemas-ter’s pro se petition for review.
I.
A. FINRA and the Commission’s regulatory framework
FINRA is a securities industry self-regulatory organization (SRO) registered with the Commission under Section 15A of the Securities Exchange Act (the Exchange Act), 15 U.S.C. § 78o-3. As a condition of its registration, FINRA is required to have in place rules regulating the conduct of its broker-dealer members and other participants. Id. § 78o-3(b)(6)-(8). These rules must provide for the enforcement of federal securities laws and the Commission’s rules, including the imposition of disciplinary sanctions. See id. § 78o-3(b)(7); id. 78o-3(k)(2)(C). FINRA’s Rules provide for a variety of sanctions that FINRA may impose on its members and other participants for violating securities laws, including censures, fines, suspensions, expulsions, or “any other fitting sanction.” FINRA Rule 8310.[1]
Disciplinary proceedings before FINRA are placed on either an ordinary or expedited track. See FINRA Rules 9370, 9550-9559. Both tracks involve similar procedural steps, but FINRA endeavors to handle expedited disciplinary proceedings more quickly. See FINRA Rules 9559, 9290. Additionally, although most sanctions imposed in an ordinary FINRA disciplinary proceeding are automatically stayed pending the Commission’s review, sanctions imposed in an expedited proceeding are not. See FINRA Rules 9370(a), 9559(r). However, an aggrieved party may request a stay from the Commission, which the Commission must decide on an expedited basis “consistent with the Commission’s other responsibilities.” 17 C.F.R. § 201.401(d).
Among the provisions enforced by FIN-RA are Exchange Act Section 17(e)(1)(A), 15 U.S.C. § 78q(e)(l)(A), and Commission Rule 17a-5(d), 17 C.F.R. § 240.17a-5(d). The provisions, which FINRA enforced against Sharemaster here, require some registered broker-dealers to “annually file ... a balance sheet and income statement certified by” a public accounting firm registered with the Public Company Accounting Oversight Board (PCAOB). 15 U.S.C. § 78q(e)(l)(A).
Once FINRA’s internal disciplinary process is complete, an aggrieved party may file an application for review with the Commission. Exchange Act Section 19(d)(2) authorizes the Commission to review “any final disciplinary sanction” or denial of access that, like the sanction at issue here, Section 19(d)(1) requires FIN-RA to report to the Commission. Id. § 78s(d)(l), (2).
While Section 19(d) addresses what FINRA actions “shall be subject to re *1063 view,” Section 19(e) — entitled “Disposition of review; cancellation, reduction, or remission of sanction” — governs the scope of the Commission’s remedial authority. In deciding an application for review of a final disciplinary sanction, Section 19(e)(1) requires the Commission to declare whether FINRA correctly found a violation of applicable rules or, if not, to set aside the sanction. Id. § 78s(e)(l)(A), (B). If the Commission finds a violation, it may “affirm the sanction imposed ..., modify the sanction ..., or remand ... for further proceedings.” Id. § 78s(e)(l)(A). Additionally, if the Commission finds that the sanction “imposes any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter or is excessive or oppressive, [the Commission] may cancel, reduce, or require the remission of such sanction.” Id. § 78s(e)(2).
Section 19(f) — entitled “Dismissal of review proceeding” — addresses the Commission’s review of “denials of access” imposed by FINRA and other SROs. It directs the Commission to dismiss an un-meritorious challenge to an action denying access to FINRA or, in the case of a meritorious challenge, set aside FINRA’s action and grant the access that FINRA denied. Id. § 78s(f).
B. Background
1. Sharemaster’s business and 2009 annual report
Sharemaster is a registered securities broker-dealer and FINRA member that is wholly owned and operated by Howard Feigenbaum. Sharemaster’s alleged annual income is modest at around $10,000. Its business is limited to acting as an agent for investment and insurance companies in the sale of mutual funds and variable insurance products. It does not hold any customer funds or securities. In preparing an annual audit report for 2009, Sharemas-ter learned that review of the report by a PCAOB-registered accountant may be required under 17 C.F.R. § 240.17a-5(f)(l). Sharemaster found that a PCAOB-regis-tered accountant would charge significantly more to prepare the required annual report than the certified public accountant that Sharemaster regularly used — $2,800 instead of the usual $585 charge. According to Sharemaster, this increased cost would inflict a significant financial hardship on its small business. After consulting with the Commission, Sharemaster learned that 17 C.F.R. § 240.17a-5(e)(l)(i)(A) provides for an exemption from the PCAOB requirement for certain securities brokers and dealers.[2] Believing that it qualified for this exemption as an agent that does not hold customer funds or securities, Share-master filed an annual audit report using a certified accountant who was not registered with the PCAOB.
2. FINRA’s disciplinary sanction on Sharemaster
In May of 2010, FINRA’s Department of Member Regulation rejected Sharemas-ter’s annual report and suspended Share-master’s FINRA membership because the *1064 report did not comply with Rule 17 a-5(d)’s PCAOB requirement. Sharemaster filed a request for a hearing before a FIN-RA hearing panel, which was held on June 24, 2010. On October 6, 2010, the hearing panel found that Sharemaster’s report did not comply with Rule 17 a-5(d)’s PCAOB requirement and thus rejected it. The panel sanctioned Sharemaster for the violation, ordering:
Sharemaster is suspended until it files the requisite annual report. At the end of six months, the suspension will convert to an expulsion if [Sharemaster] has at that time not filed a properly audited annual report for 2009. [Sharemaster] is also ordered to pay costs of $1,785.00, which includes an administrative fee of $750.00 and the cost of the hearing transcript.
The $1,785 sum that FINRA ordered Sharemaster to pay evidently included a $1,000 penalty for not timely complying with Rule 17 a-5(d) or, in the Commission’s words, a “late fee.” Costs associated with the hearing amounted to $750 and the cost of the hearing transcript presumably accounts for the remaining $35.
3. The Commission’s review of FIN-RA’s final disciplinary sanction
On October 29, 2010, Sharemaster filed an application for Commission review of FINRA’s final disciplinary sanction. Because the sanction was imposed in an expedited disciplinary proceeding, it was not automatically stayed. Sharemaster states that the absence of an automatic stay presented it with a Hobson’s choice: comply immediately or risk going bankrupt waiting for the Commission to decide the motion to stay. Accordingly, three days after seeking review, Sharemaster filed an annual report reviewed by a more costly, PCAOB-registered accountant. While FINRA’s order imposing the sanction stated that the suspension would be lifted upon filing of “the requisite annual report,” FINRA did not lift the suspension until January 24, 2011, almost three months later.
The Commission then requested supplemental briefing from Sharemaster and FINRA on “what impact, if any, Share-master’s subsequent compliance and FIN-RA’s lifting of the suspension would have on the Commission’s consideration” of Sharemaster’s application for review. Both FINRA and Sharemaster asserted that Sharemaster’s compliance with the PCAOB requirement and the lifting of the suspension did not foreclose the Commission’s review under Section 19(d)(2). According to FINRA, “costs that had been assessed against — but not yet paid by— Sharemaster were sufficient to preserve statutory jurisdiction.” In its brief, Share-master also argued, among other things, that the Commission had a statutory duty to review FINRA’s failure to immediately lift the suspension after Sharemaster filed a compliant report, as the delay violated the terms of FINRA’s sanction order and caused financial harm to Sharemaster.
On October 14, 2011, the Commission dismissed Sharemaster’s application for review, finding that it “lacked jurisdiction over this matter pursuant to Section 19(d) of the Exchange Act” because the suspension was no longer in effect. Sharemaster, Exchange Act Release No. 65570, 2011 WL 4889100 (Oct. 14, 2011). Sharemaster thereafter sought review by the Ninth Circuit. However, at the Commission’s request, we remanded the matter on May 7, 2012.
On remand, the Commission ordered additional briefing. This time, FINRA changed its position and argued that the Commission lacked review authority under Section 19(d)(2). Sharemaster renewed its argument that the Commission had authority to review FINRA’s sanction, as well as FINRA’s failure to timely lift the *1065 suspension upon submission of a compliant report. On August 29, 2013, the Commission withdrew its earlier order and dismissed Sharemaster’s application for review. Sharemaster, Exchange Act Release No. 70290, 2013 WL 4647204 (Aug. 29, 2013). The Commission again concluded that it lacked “statutory jurisdiction” under Section 19(d) to consider FINRA’s “final disciplinary sanction” because there was no longer a “live sanction for [it] to act upon” after FINRA lifted the suspension. Id. at *3.
In reaching this conclusion, the Commission first found the term “final disciplinary sanction” to be ambiguous because no “provision of the Exchange Act defines that term or expressly addresses whether a coercive sanction must be in force at the time of Commission review.” Id. The Commission found that the term’s ambiguity becomes more apparent when Section 19(d) is read in conjunction with Section 19(e), which suggests that a sanction must remain in place at the time of review for the Commission to “act upon”:
For instance, in describing “any proceeding to review a final disciplinary sanction,” Section 19(e)(1) provides that there must be, among other things, “opportunity for the presentation of supporting reasons to affirm, modify, or set aside the sanction.” Moreover, Section 19(e)(1)(A) provides that if an SRO acted appropriately, the Commission “shall so declare and, as appropriate, affirm the sanction imposed by the [SRO], modify the sanction ..., or remand to the [SRO] for further proceedings.” And similarly, Section 19(e)(1)(B) provides that if an SRO did not act appropriately, the Commission “shall, by order, set aside the sanction imposed by the [SRO] and, if appropriate, remand to the [SRO] for further proceedings.”
Id. at *4 (footnotes omitted).
After finding Section 19(d)(2) unclear on whether a sanction must remain in place in order to be subject to the Commission’s review, the Commission “conclude[d] that the better approach is to construe Sections 19(d) and (e) as imposing such a requirement.” Id. The Commission provided several policy considerations in support of its interpretation. First, it reasoned that because “coercive sanctions operate like judicial civil contempt sanctions ... they ought to be treated similarly.” Id. Courts have generally resisted reviewing such sanctions after “a contemnor has complied and the sanction has lifted.” Id. Second, a contrary reading of the statute would require “the Commission to issue effectively advisory opinions ... with no direct, real world effect.” Id. at *4 & n.28. Third, requiring the Commission to review a disciplinary sanction after a party has achieved compliance “could waste limited Commission resources and possibly come at the expense of parties with genuine, urgent, and ongoing disputes.” Id. at *4. Finally, “requiring a live sanction ensures meaningful review because the parties will have a substantial and concrete interest in the outcome of the proceedings.” Id. at *5.
The Commission next addressed Share-master’s contention that FINRA’s failure to promptly lift the suspension after Sharemaster filed a compliant report constituted a “denial of access” subject to review by the Commission. Id. at *5 & n.32. In a footnote, the Commission suggested that FINRA wrongly delayed lifting the suspension.[3] Nonetheless, the *1066 Commission found that it “still lack[ed] jurisdiction because the suspension has lifted and ... there is nothing to ‘affirm, modify, or set aside.’ ” Id. at *5. The Commission declined to consider the extended suspension a “denial of access” under Section 19(d) for purposes of determining its statutory authority to review FINRA’s action. It reasoned that “the extended suspension was inextricably intertwined with the October 6 FINRA hearing panel order and, as a result, it is appropriately considered a final disciplinary sanction and not a denial of access.” Id. at *5 n.32.
Finally, the Commission rejected numerous arguments by Sharemaster that FINRA’s disciplinary sanction remained subject to review even though Sharemas-ter had submitted a compliant report and FINRA had lifted the suspension. See id. at *5-6. Concluding that no final disciplinary sanction remained in place to act upon, the Commission dismissed Sharemaster’s application for review. Id. at *6.
On September 9, 2013, Sharemaster timely filed this pro se petition for review. We have jurisdiction pursuant to Section 25(a)(1) of the Exchange Act, 15 U.S.C. § 78y(a)(l).[4]
II.
Sharemaster challenges the Commission’s decision dismissing its application for review on two grounds. First, Share-master argues that the Commission’s “live-sanction” requirement is inconsistent with Section 19(d)(2), which directs the Commission to review any final disciplinary sanction imposed by FINRA. Second, Sharemaster contends that, even if a live-sanction requirement is read into the statute, the Commission unreasonably applied the requirement in dismissing Sharemas-ter’s application for review. We disagree with Sharemaster’s first argument, but agree with its second.
A. The Commission’s interpretation of Section 19(d)(2) is entitled to Chevron deference.
Sharemaster’s first argument requires us to decide whether the Commission’s interpretation of Section 19(d)(2) warrants deference under the familiar two-step analysis set forth in Chevron, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694.[5]
At step one of the Chevron framework, we must “determine ‘whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.’ ” City of Arlington, Tex. v. FCC, — U.S.-, 133 S.Ct. 1863, 1868, 185 L.Ed.2d 941 (2013) (quoting Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778). Our analysis begins “with the text of the statute.” Yokeno v. Sekiguchi, 754 F.3d 649, 653 (9th Cir. 2014). “The plainness or ambiguity of statutory language is determined by reference to the *1067 language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).
Looking to the Exchange Act, we conclude that Congress did not speak to the precise question presented: whether the Commission is authorized only to review final disciplinary sanctions that remain live. Section 19(d)(2) authorizes the Commission to review “any final disciplinary sanction” or denial of “access to services” imposed by registered SROs, but the Exchange Act does not define these terms. 15 U.S.C. § 78s(d)(l)-(2). While the Commission has by regulation defined “final disciplinary action,” 17 C.F.R. § 240.19d-l(c)(l), the regulation also is silent on whether a sanction must remain in effect in order to be subject to review.[6]
Section 19(d)(2)’s broader statutory context does not resolve the ambiguity created by this silence. As the Commission explained, other parts of the statute lend some support to the view that, in order to be subject to review by the Commission, a final disciplinary sanction imposed by an SRO must remain in place. Specifically, Section 19(e)(1) directs the Commission, in disposing of an application for review, to issue a declaratory judgment and, “as appropriate,” “affirm,” “modify,” or “set aside” the sanction, or “remand” to. the SRO for further proceedings. 15 U.S.C. § 78s(e)(l). This provision suggests but, as the Commission concedes, does not unambiguously confirm that Congress intended that there remain a sanction in place for the Commission to affirm, modify, or set aside.
The legislative history is similarly inconclusive. While the legislative history suggests that the term “disciplinary sanction” was intended to be “broadly defined,” it is also silent on whether such a sanction must remain live in order to be subject to the Commission’s review. See S. Comm. on Banking, Housing & Urban Affairs, Securities Acts Amendments of 1975, Accompanying S. 249, S. Rep. No. 94-75, at 24 (1975).
Because the statute is “silent or ambiguous with respect to the specific issue” addressed by the Commission — whether the Commission has a statutory duty to review a “final disciplinary sanction” that is moot or, in the Commission’s words, no longer “live” — we find that the first step of Chevron is satisfied and we move on to step two. See Chevron, 467 U.S. at 843, 104 S.Ct. 2778.
Step two of the Chevron framework requires us to determine “whether the agency’s [interpretation] is based on a permissible construction of the statute.” Id. If the agency’s interpretation is not in conflict with the statute and represents a “reasonable policy choice for the agency to make,” we must defer to it. Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 986, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005).
*1068 For the same reasons that we found the statute ambiguous, we conclude that the Commission’s interpretation of Section 19(d)(2) to require a sanction to remain in place in order to be subject to review is permissible. Again, the Exchange Act is silent on this issue and Section 19(e)(1) can be read to require that a disciplinary sanction remain in place for the Commission to act upon.
The Commission’s asserted policy considerations supporting its interpretation of the scope of its authority are reasonable. As mentioned, the Commission justified a live-sanction requirement by analogizing to doctrines applicable to Article III courts. The Commission explained that its live-sanction requirement finds support in the rule that voluntary compliance with a civil contempt order generally precludes appellate review. See SEC v. Hickey, 322 F.3d 1123, 1128 (9th Cir. 2003) (recognizing that “the purging of the contempt ordinarily renders the controversy moot”). The Commission also explained that a live-sanction requirement furthers its interest in avoiding unwarranted advisory opinions and thereby conserving its limited resources. Analogizing-to Article III standing doctrine, the Commission further explained that requiring a live sanction would help “ensure[ ] meaningful review because the parties will have a substantial and concrete interest in the outcome of the proceedings.” Sharemas-ter, 2013 WL 4647204, at *5. These policy considerations are without doubt reasonable.
Indeed, if an SRO such as FINRA imposed a disciplinary sanction but then fully retracted the sanction by, for example, setting aside a suspension and returning any fine levied, it would make little sense for the Commission to proceed with review. This common-sense observation highlights the reasonableness of the Commission’s view that it need not review moot sanctions. In fact, it is reasonable for the Commission to assume that Congress legislated against the backdrop of mootness and standing doctrines in defining the scope of the Commission’s quasi-judicial review authority. See City of Arlington, 133 S.Ct. at 1868 (noting that Congress should be presumed to legislate with stable background rules in mind). While these doctrines apply to Article III courts, analogous doctrines are also well established in the context of quasi-judicial agency adjudications. See, e.g., Or. Cedar Prods. Co., 119 IBLA 89, 92 (1991) (“[T]he [Interior Board of Land Appeals] decides actual controversies and avoids giving opinions on moot questions or abstract propositions.”).
We hold that the Commission’s interpretation of Section 19(d)(2) as only permitting review of “live” disciplinary sanctions is permissible under the statute and based on reasonable policy considerations. We therefore defer to the Commission’s interpretation.
B. The Commission unreasonably decided that the disciplinary sanction imposed by FINRA on Sharemaster was no longer live.
Our inquiry does not end with our conclusion that the Commission’s interpretation of Section 19(d)(2) is entitled to Chevron deference. The question remains whether the Commission’s application of its live-sanction requirement to dismiss ’ Sharemaster’s application for review was reasonable and consistent with applicable law. Whether framed as going to the scope of the Commission’s review authority or the application of its delegated authority, “the underlying question [is] the same”: Did the Commission unreasonably refuse to review Sharemaster’s case? See City of Arlington, 133 S.Ct. at 1870. We find that it did.
*1069 Before the Commission, Sharemaster offered numerous reasons why the disciplinary sanction FINRA imposed remained “live” after Sharemaster submitted a compliant report and FINRA lifted the suspension. One such reason was that Sharemaster was still stuck with a $1,000 penalty for not timely filing a compliant annual report. In its order, the Commission offered two reasons why this financial loss did not preserve FINRA’s review authority after the suspension was lifted.
First, the Commission suggested that the entire $1,785 sum may have represented the “cost” of pursuing a hearing before FINRA, rather than a disciplinary fine. Sharemaster, 2013 WL 4647204, at *6 n.37. However, the Commission’s own dismissal order and briefing before this court undermine this position. In its dismissal order, the Commission stated only that $1,000 of the $1,785 that FINRA ordered Sharemas-ter to pay “appears to be another example of costs assessed as part of the FINRA proceedings.” Id. (emphasis added). In its answering brief on appeal, the Commission conceded that this $1,000 sum was “apparently [a] late fee.”[7] We agree. FINRA’s decision plainly suggests that FINRA imposed a $1,000 penalty on Sharemaster, in addition to taxing a $750 “administrative fee” and a $35 transcript fee.
Second, the Commission stated in its dismissal order that, “even if this amount did not represent an assessment of costs, we would still ... lack the power to order FINRA to repay Sharemaster.” Id. at *6 n.37. The Commission did not explain why this is so, but referenced footnote 36 of its order. That footnote, in turn, references two Commission decisions that offer no support for the Commission’s position. The first decision held in relevant part that the Commission is “not authorized ... to award [monetary] damages.” Beatrice J. Feins, Exchange Act Release No. 33374, 1993 WL 538913, at *3 n.14 (Dec. 23,1993). This decision does not support the Commission’s position because Sharemaster does not seek damages. The second Commission decision stated that “Exchange Act Section 19 does not appear to authorize the setting aside of [an SRO’s] Fees assessment or authorize ‘remission’ of the Fees” charged in connection with a hearing before an SRO. Marshall Fin., Inc., Exchange Act Release No. 50343, 2004 WL 2026518, at *2-3 & n.21 (Sept. 10, 2004). This decision does not lend the Commission support because, in addition to charging $785 in administrative fees associated with the hearing, FINRA imposed a $1,000 fine on Sharemaster possibly for failing to timely file a compliant annual report.
The imposition of a fine is a “disciplinary sanction” under both FINRA’s rules and the Commission’s precedent. See FINRA Rule 8310 (listing “fine” as a disciplinary sanction); 17 C.F.R. § 240.19d-l(c)(2) (acknowledging that a sanction may “consist ] of a fine”); Tague Sec. Corp., Exchange Act Release No. 18510, 47 SEC 743, 1982 WL 32205, at *2 (Feb. 25, 1982) (listing “expulsion, suspension, fine or censure” as final disciplinary sanctions). Calling the $1,000 a “late fee” is of no moment.[8] Regardless of its label, it appears to be a penalty imposed for not timely filing *1070 an annual report prepared by a PCAOB-registered accountant. It is not part of the separately ledgered “administrative fee” that FINRA taxed to Sharemaster for pursuing an administrative appeal. The fine became a “final” disciplinary sanction when Sharemaster exhausted remedies before FINRA. The sanction remained “live” even after the suspension lifted because the fine was not canceled and the money was not remitted to Sharemaster.
Unlike the sunk transactional costs of pursuing an administrative appeal, if Sharemaster prevails on the merits of his argument (that he was not required to use a PCAOB-registered accountant), the Commission would be compelled to set aside the $1,000 fine because Sharemaster, in fact, timely complied with securities laws. The Commission’s view that it lacks authority to order FINRA to “repay” the $1,000 conflicts with the Exchange Act. The Commission has authority to “act upon” a monetary sanction pursuant to Section 19(d)(2) and 19(e). Section 19(e)(1) provides that the' Commission must “set aside” such a sanction if it was incorrectly levied. 15 U.S.C. § 78s(e)(l). Moreover, Section 19(e)(2) makes clear that the Commission has authority to “cancel, reduce, or require the remission of such sanction,” even if the fine was correctly levied. Id. § 78s(e)(2) (emphasis added).[9]
Given that the Commission is empowered to “undo what has already been done,” the monetary sanction is not moot. Nw. Res. Info. Ctr. v. Nat’l Marine Fisheries Serv., 56 F.3d 1060, 1069 (9th Cir. 1995). The fact that $1,000 might be characterized as a less-than-substantial amount is without consequence. “As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.” Campbell-Ewald Co. v. Gomez, — U.S.-, 136 S.Ct. 663, 669, 193 L.Ed.2d 571 (2016). Moreover, this amount of money is substantial to Share-master’s small business.
The government contends, and our dissenting colleague would hold, that Sharemaster waived any argument based on the $1,000 fine by not raising it in its briefs. Ordinarily, we will not consider “matters on appeal that are not specifically and distinctly argued in appellant’s opening brief.” United States v. Ullah, 976 F.2d 509, 514 (9th Cir. 1992). The general waiver rule applies even to non-lawyers like Sharemaster who proceed pro se in the face of a complicated statutory scheme. See Wilcox v. Comm’r, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988). However, we make an exception to the general rule (1) for “good cause shown” or “if a failure to do so would result in manifest injustice,” (2) “when [the issue] is raised in the appellee’s brief,” or (3) “if the failure to raise the issue properly did not prejudice the defense of the opposing party.” Ullah, 976 F.2d at 514 (internal citation and quotation marks omitted); see also United States v. Salman, 792 F.3d 1087, 1090 (9th Cir. 2015), cert. granted in part, — U.S. -, 136 S.Ct. 899, 193 L.Ed.2d 788 (2016), and aff'd, — U.S. -, 137 S.Ct. 420, 196 L.Ed.2d 351 (2016).
The second and third exceptions apply here. Sharemaster raised the argument in front of the Commission, and the Commission addressed the merits of Sharemaster’s argument in its decision below and again in its answering brief on appeal. At oral argument, Sharemaster stated that it did *1071 not intend to waive this issue. See Hall v. City of Los Angeles, 697 F.3d 1059, 1072 (9th Cir. 2012) (finding no prejudice where parties had opportunity to brief the issue); Ibarra-Flores v. Gonzales, 439 F.3d 614, 619 n.4 (9th Cir. 2006) (considering an issue not raised in an opening brief where an opponent had an opportunity to address the issue at oral argument). In addition, to ensure that our consideration would not prejudice either side, we requested and received supplemental briefs on this issue. We further note that it was the government that called the $1,000 a “late fee” in its brief; these words were not put in its mouth by Sharemaster.
Sharemaster makes several additional arguments in support of the view that the disciplinary sanction remains a live injury capable of being redressed. For example, Sharemaster contends that the Commission has authority to retroactively shorten Sharemaster’s suspension and direct FIN-RA to reinstate Sharemaster to membership nunc pro tunc, which Sharemaster alleges would allow it to collect commissions that would have been paid it if not for the suspension. Sharemaster also argues that, even if the sanction is no longer live, it is capable of repetition but evading review and thus should qualify for an exception to the live-sanction requirement. We need not reach these arguments or Sharemaster’s due process claim because we conclude that the disciplinary sanction imposed by FINRA remained live based on the $1,000 fine. Accordingly, Sharemas-ter’s challenge to FINRA’s final disciplinary sanction is subject to review by the Commission pursuant to Section 19(d)(2). We leave it to the Commission to determine on remand whether, if Sharemaster prevails on the merits of its argument regarding the applicability of the PCAOB-registered-accountant requirement, the Commission may direct FINRA to reinstate Sharemaster nunc pro tunc.
III.
We hold that the Commission’s interpretation of Section 19(d)(2) as limiting its review authority to final disciplinary sanctions that remain live is entitled to Chevron deference. However, we hold that the Commission unreasonably decided that the monetary penalty that FINRA imposed on Sharemaster was not a sanction and thus not a live disciplinary sanction.
Sharemaster’s pro se petition for review is GRANTED. Each side shall bear its own costs of this appeal.

. FINRA’s rules are available at http://finra. complinet.com/en/display/display_main.html? rbid=2403& elemen1_id=3889.

. The exemption provides in relevant part:
The broker dealer is not required to engage an independent public accountant to provide the reports ... if, since the date of the registration of the broker or dealer under section 15 of the Act (15 U.S.C. 78o) or of the previous annual reports filed under paragraph (d) of this section:
(A) The securities business of the broker or dealer has been limited to acting as broker (agent) for the issuer in soliciting subscriptions for securities of the issuer, the broker has promptly transmitted to the issuer all funds and promptly delivered to the subscriber all securities received in connection with the transaction, and the broker has not otherwise held funds or securities for or owed money or securities to customers.
17 C.F.R. § 240.17a-5(e)(l)(i)(A).

. The Commission noted that "[t]he plain text of the FINRA hearing panel order provided that, 'Sharemaster is suspended until it files the requisite annual report.’ ” Id. at *5 n.31 (emphasis added). It observed that FINRA did "not explain how the language quoted above could have reasonably notified Sharemaster that the suspension would not lift until FINRA conducted and completed ... a review” of the report. Id.

. Mr. Feigenbaum may proceed pro se because he is Sharemaster’s sole proprietor. See, e.g., Holdings AVV v. PDVSA Petroleo S.A., 506 F.3d 350, 354 n.4 (4th Cir. 2007) (‘‘[A] sole proprietorship has no legal existence apart from its owner, and ... an individual owner may represent his sole proprietorship in a pro se capacity.”); Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007) (same).

. The preconditions to application of the Chevron framework are satisfied. Congress vested the Commission with general authority to administer the Exchange Act and oversee SROs through rulemaking and formal adjudication. See, e.g., 15 U.S.C. § 78s(d)(2). The Commission set forth its interpretation of Section 19(d)(2) through a formal exercise of its adjudicative authority. See City of Arlington, Tex. v. FCC, - U.S. -, 133 S.Ct. 1863, 1871-73, 185 L.Ed.2d 941 (2013); I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

. The regulation provides:
[A] "final disciplinary action” shall mean the imposition of any final disciplinary sanction pursuant to section 6(b)(6), 15A(b)(7), or 17A(b)(3)(G) of the Act or other action of a self-regulatory organization which, after notice and opportunity for hearing, results in any final disposition of charges of:
(i) One or more violations of—
(A) The rules of such organization; (B) The provisions of the Act or rules thereunder; ...
17 C.F.R. § 240.19d-l(c)(l). Neither party has mentioned this regulation. The regulation might be interpreted to support the view that a "final disciplinary action” subject to review under Section 19(d)(2) includes a finding of "one or more violations” even where a coercive sanction was not imposed. However, the regulation does not compel such an interpretation.

. In response to our request for supplemental briefs, the Commission was unable to improve on its assertion that the amount "includes an administrative fee of $750.00 and the cost of the hearing transcript" and that a "[n]o further breakdown was provided.” Sept. 29 2016 Letter Brief at 2.

. Such an argument reads "like the caption ‘This is not a pipe’ below Magritte’s famous painting of a pipe.” Cuero v. Cate, 827 F.3d 879, 887 n.9 (9th Cir.2016). Of course, Magritte's painting was not a pipe but only a painting of one, whereas a $1,000 penalty for not complying with applicable rules is nothing other than a fine.

. The dissent engages in extensive independent research to bolster its conclusion that the $1,000 charge — "this mystery document” (dissent at page 30) — is most likely not a sanction. Perhaps on remand, the Commission will make such a showing, which it has so far failed to do. We hold only that on this record, the Commission has not shown that this controversy is moot.