**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHAREMASTER,

*Petitioner*,

v.

U.S. SECURITIES & EXCHANGE
COMMISSION,

*Respondent.*

No. 13-73199

OPINION

On Petition for Review of an Order of the
Securities & Exchange Commission

Argued February 3, 2016
Submitted February 2, 2017
Pasadena, California

Filed February 2, 2017

Before: Consuelo M. Callahan, and N. Randy Smith,
Circuit Judges, and Jed S. Rakoff,* District Judge.

Opinion by Judge Callahan;
Partial Concurrence and Partial Dissent by
Judge N.R. Smith

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

# SUMMARY[*]

## Securities and Exchange Commission /  Financial Industry Regulatory Authority

The panel granted the pro se petition for review by Sharemaster, a registered broker dealer, and held that the Securities and Exchange Commission's decision – that a $1000 penalty that the Financial Industry Regulatory Authority ("FINRA") imposed on Sharemaster was not a "live" sanction capable of redress – was unreasonable and inconsistent with applicable law.

FINRA rejected Sharemaster's annual report and suspended Sharemaster's FINRA membership because Sharemaster's report did not comply with the SEC's Rule 17a-5(d)'s requirement that broker-dealers annually file a balance sheet and income statement certified by a public accounting firm registered with the Public Company Accounting Oversight Board.  FINRA also ordered Sharemaster to pay $1,785 in costs.  The SEC dismissed Sharemaster's application for review.

The panel held that the SEC's interpretation of Securities Exchange Act Section 19(d)(2) to include a live-sanction requirement was entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  The panel further held that the SEC unreasonably decided that the disciplinary sanction imposed by FINRA on Sharemaster was no longer live.  The panel concluded that the

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

disciplinary sanction imposed by FINRA remained live based on a $1000 fine, and Sharemaster's challenge to FINRA's final disciplinary sanction was subject to review by the SEC. The panel remanded for the SEC to determine whether, if Sharemaster prevails on the merits of its argument regarding the applicability of a registered-accountant requirement, the SEC may direct FINRA to reinstate Sharemaster *nunc pro tunc*.

Judge N.R. Smith dissented in part because the majority resolved the case on grounds not raised by the parties and not supported by the record. He did, however, agree with the majority's conclusion that the SEC's interpretation of Securities Exchange Act Section 19(d)(2), concerning a live-sanction requirement, was entitled to *Chevron* deference. Judge N.R. Smith would hold that there is substantial evidence to support the SEC's finding that no part of the $1,785 in costs was a sanction, and he would deny the petition for review.

## COUNSEL

Howard Feigenbaum (argued), Hemet, California, *pro se* Petitioner.

Nicholas Bronni (argued), Senior Counsel; William K. Shirey, Assistant General Counsel; Jacob H. Stillman, Solicitor; Anne K. Small, General Counsel; Securities and Exchange Commission, Washington, D.C.; for Respondent.

## OPINION

CALLAHAN, Circuit Judge:

Securities Exchange Act Section 19(d)(2) authorizes the Securities and Exchange Commission (the Commission) to review any "final disciplinary sanction" imposed by a registered securities industry self-regulatory organization, including the Financial Industry Regulatory Authority (FINRA). 15 U.S.C. § 78s(d)(2). This case requires us to decide whether the Commission's review authority under Section 19(d)(2) is limited to final disciplinary sanctions that remain "live." The Commission interpreted Section 19(d)(2) to include a live-sanction requirement in dismissing petitioner Sharemaster's application for review of a disciplinary sanction imposed by FINRA. We hold that Commission's interpretation of Section 19(d)(2) is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, *Inc.*, 467 U.S. 837 (1984). However, we conclude that the Commission's decision that a $1,000 penalty that FINRA imposed on Sharemaster is not a "live" sanction capable of redress is unreasonable and inconsistent with applicable law. We therefore grant Sharemaster's *pro se* petition for review.

## I.

### A. FINRA and the Commission's regulatory framework

FINRA is a securities industry self-regulatory organization (SRO) registered with the Commission under Section 15A of the Securities Exchange Act (the Exchange Act), 15 U.S.C. § 78o-3. As a condition of its registration, FINRA is required to have in place rules regulating the

conduct of its broker-dealer members and other participants. *Id.* § 78o-3(b)(6)–(8). These rules must provide for the enforcement of federal securities laws and the Commission's rules, including the imposition of disciplinary sanctions. *See id.* § 78o-3(b)(7); *id*. 78o-3(k)(2)(C). FINRA's Rules provide for a variety of sanctions that FINRA may impose on its members and other participants for violating securities laws, including censures, fines, suspensions, expulsions, or "any other fitting sanction." FINRA Rule 8310.[1]

Disciplinary proceedings before FINRA are placed on either an ordinary or expedited track. *See* FINRA Rules 9370, 9550–9559. Both tracks involve similar procedural steps, but FINRA endeavors to handle expedited disciplinary proceedings more quickly. *See* FINRA Rules 9559, 9290. Additionally, although most sanctions imposed in an ordinary FINRA disciplinary proceeding are automatically stayed pending the Commission's review, sanctions imposed in an expedited proceeding are not. *See* FINRA Rules 9370(a), 9559(r). However, an aggrieved party may request a stay from the Commission, which the Commission must decide on an expedited basis "consistent with the Commission's other responsibilities." 17 C.F.R. § 201.401(d).

Among the provisions enforced by FINRA are Exchange Act Section 17(e)(1)(A), 15 U.S.C. § 78q(e)(1)(A), and Commission Rule 17a-5(d), 17 C.F.R. § 240.17a-5(d). The provisions, which FINRA enforced against Sharemaster here, require some registered broker-dealers to "annually file . . . a balance sheet and income statement certified by" a public accounting firm registered with the Public Company

---

[1] FINRA's rules are available at http://finra.complinet.com /en/display/display_main.html?rbid=2403&element_id=3889.

Accounting Oversight Board (PCAOB).          15 U.S.C. § 78q(e)(1)(A).

Once FINRA's internal disciplinary process is complete, an aggrieved party may file an application for review with the Commission. Exchange Act Section 19(d)(2) authorizes the Commission to review "any final disciplinary sanction" or denial of access that, like the sanction at issue here, Section 19(d)(1) requires FINRA to report to the Commission. *Id.* § 78s(d)(1), (2).

While Section 19(d) addresses what FINRA actions "shall be subject to review," Section 19(e)—entitled "Disposition of review; cancellation, reduction, or remission of sanction"— governs the scope of the Commission's remedial authority. In deciding an application for review of a final disciplinary sanction, Section 19(e)(1) requires the Commission to declare whether FINRA correctly found a violation of applicable rules or, if not, to set aside the sanction. *Id*. § 78s(e)(1)(A), (B). If the Commission finds a violation, it may "affirm the sanction imposed . . . , modify the sanction . . . , or remand . . . for further proceedings." *Id.* § 78s(e)(1)(A). Additionally, if the Commission finds that the sanction "imposes any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter or is excessive or oppressive, [the Commission] may cancel, reduce, or require the remission of such sanction." *Id.* § 78s(e)(2).

Section 19(f)—entitled "Dismissal of review proceeding"—addresses the Commission's review of "denials of access" imposed by FINRA and other SROs. It directs the Commission to dismiss an unmeritorious challenge to an action denying access to FINRA or, in the case of a

meritorious challenge, set aside FINRA's action and grant the access that FINRA denied. *Id.* § 78s(f).

## B. Background

### 1. Sharemaster's business and 2009 annual report

Sharemaster is a registered securities broker-dealer and FINRA member that is wholly owned and operated by Howard Feigenbaum. Sharemaster's alleged annual income is modest at around $10,000. Its business is limited to acting as an agent for investment and insurance companies in the sale of mutual funds and variable insurance products. It does not hold any customer funds or securities. In preparing an annual audit report for 2009, Sharemaster learned that review of the report by a PCAOB-registered accountant may be required under 17 C.F.R. § 240.17a-5(f)(1). Sharemaster found that a PCAOB-registered accountant would charge significantly more to prepare the required annual report than the certified public accountant that Sharemaster regularly used—$2,800 instead of the usual $585 charge. According to Sharemaster, this increased cost would inflict a significant financial hardship on its small business. After consulting with the Commission, Sharemaster learned that 17 C.F.R. § 240.17a-5(e)(1)(i)(A) provides for an exemption from the PCAOB requirement for certain securities brokers and dealers.[2] Believing that it qualified for this exemption as an

---

[2] The exemption provides in relevant part:

> The broker dealer is not required to engage an independent public accountant to provide the reports . . . if, since the date of the registration of the broker or dealer under section 15 of the Act (15 U.S.C. 78o) or of

agent that does not hold customer funds or securities, Sharemaster filed an annual audit report using a certified accountant who was not registered with the PCAOB.

## 2. FINRA's disciplinary sanction on Sharemaster

In May of 2010, FINRA's Department of Member Regulation rejected Sharemaster's annual report and suspended Sharemaster's FINRA membership because the report did not comply with Rule 17 a-5(d)'s PCAOB requirement. Sharemaster filed a request for a hearing before a FINRA hearing panel, which was held on June 24, 2010. On October 6, 2010, the hearing panel found that Sharemaster's report did not comply with Rule 17 a-5(d)'s PCAOB requirement and thus rejected it. The panel sanctioned Sharemaster for the violation, ordering:

> Sharemaster is suspended until it files the requisite annual report. At the end of six months, the suspension will convert to an expulsion if [Sharemaster] has at that time not filed a properly audited annual report for

---

the previous annual reports filed under paragraph (d) of this section:

(A) The securities business of the broker or dealer has been limited to acting as broker (agent) for the issuer in soliciting subscriptions for securities of the issuer, the broker has promptly transmitted to the issuer all funds and promptly delivered to the subscriber all securities received in connection with the transaction, and the broker has not otherwise held funds or securities for or owed money or securities to customers.

17 C.F.R. § 240.17a-5(e)(1)(i)(A).

> 2009. [Sharemaster] is also ordered to pay costs of $1,785.00, which includes an administrative fee of $750.00 and the cost of the hearing transcript.

The $1,785 sum that FINRA ordered Sharemaster to pay evidently included a $1,000 penalty for not timely complying with Rule 17 a-5(d) or, in the Commission's words, a "late fee." Costs associated with the hearing amounted to $750 and the cost of the hearing transcript presumably accounts for the remaining $35.

### 3. The Commission's review of FINRA's final disciplinary sanction

On October 29, 2010, Sharemaster filed an application for Commission review of FINRA's final disciplinary sanction. Because the sanction was imposed in an expedited disciplinary proceeding, it was not automatically stayed. Sharemaster states that the absence of an automatic stay presented it with a Hobson's choice: comply immediately or risk going bankrupt waiting for the Commission to decide the motion to stay. Accordingly, three days after seeking review, Sharemaster filed an annual report reviewed by a more costly, PCAOB-registered accountant. While FINRA's order imposing the sanction stated that the suspension would be lifted upon filing of "the requisite annual report," FINRA did not lift the suspension until January 24, 2011, almost three months later.

The Commission then requested supplemental briefing from Sharemaster and FINRA on "what impact, if any, Sharemaster's subsequent compliance and FINRA's lifting of the suspension would have on the Commission's

consideration" of Sharemaster's application for review. Both FINRA and Sharemaster asserted that Sharemaster's compliance with the PCAOB requirement and the lifting of the suspension did not foreclose the Commission's review under Section 19(d)(2). According to FINRA, "costs that had been assessed against—but not yet paid by—Sharemaster were sufficient to preserve statutory jurisdiction." In its brief, Sharemaster also argued, among other things, that the Commission had a statutory duty to review FINRA's failure to immediately lift the suspension after Sharemaster filed a compliant report, as the delay violated the terms of FINRA's sanction order and caused financial harm to Sharemaster.

On October 14, 2011, the Commission dismissed Sharemaster's application for review, finding that it "lacked jurisdiction over this matter pursuant to Section 19(d) of the Exchange Act" because the suspension was no longer in effect. *Sharemaster*, Exchange Act Release No. 65570, 2011 WL 4889100 (Oct. 14, 2011). Sharemaster thereafter sought review by the Ninth Circuit. However, at the Commission's request, we remanded the matter on May 7, 2012.

On remand, the Commission ordered additional briefing. This time, FINRA changed its position and argued that the Commission lacked review authority under Section 19(d)(2). Sharemaster renewed its argument that the Commission had authority to review FINRA's sanction, as well as FINRA's failure to timely lift the suspension upon submission of a compliant report. On August 29, 2013, the Commission withdrew its earlier order and dismissed Sharemaster's application for review. *Sharemaster*, Exchange Act Release No. 70290, 2013 WL 4647204 (Aug. 29, 2013). The Commission again concluded that it lacked "statutory jurisdiction" under Section 19(d) to consider FINRA's "final

disciplinary sanction" because there was no longer a "live sanction for [it] to act upon" after FINRA lifted the suspension. *Id.* at \*3.

In reaching this conclusion, the Commission first found the term "final disciplinary sanction" to be ambiguous because no "provision of the Exchange Act defines that term or expressly addresses whether a coercive sanction must be in force at the time of Commission review." *Id.* The Commission found that the term's ambiguity becomes more apparent when Section 19(d) is read in conjunction with Section 19(e), which suggests that a sanction must remain in place at the time of review for the Commission to "act upon":

> For instance, in describing "any proceeding to review a final disciplinary sanction," Section 19(e)(1) provides that there must be, among other things, "opportunity for the presentation of supporting reasons to *affirm, modify, or set aside the sanction*." Moreover, Section 19(e)(1)(A) provides that if an SRO acted appropriately, the Commission "shall so declare *and*, as appropriate, *affirm the sanction* imposed by the [SRO], *modify the sanction . . .* , *or remand* to the [SRO] for further proceedings." And similarly, Section 19(e)(1)(B) provides that if an SRO did not act appropriately, the Commission "shall, by order, *set aside the sanction* imposed by the [SRO] and, if appropriate, remand to the [SRO] for further proceedings."

*Id.* at \*4 (footnotes omitted).

After finding Section 19(d)(2) unclear on whether a sanction must remain in place in order to be subject to the Commission's review, the Commission "conclude[d] that the better approach is to construe Sections 19(d) and (e) as imposing such a requirement." *Id*. The Commission provided several policy considerations in support of its interpretation. First, it reasoned that because "coercive sanctions operate like judicial civil contempt sanctions . . . they ought to be treated similarly." *Id*. Courts have generally resisted reviewing such sanctions after "a contemnor has complied and the sanction has lifted." *Id*. Second, a contrary reading of the statute would require "the Commission to issue effectively advisory opinions . . . with no direct, real world effect." *Id*. at *4 & n.28. Third, requiring the Commission to review a disciplinary sanction after a party has achieved compliance "could waste limited Commission resources and possibly come at the expense of parties with genuine, urgent, and ongoing disputes." *Id*. at *4. Finally, "requiring a live sanction ensures meaningful review because the parties will have a substantial and concrete interest in the outcome of the proceedings." *Id*. at *5.

The Commission next addressed Sharemaster's contention that FINRA's failure to promptly lift the suspension after Sharemaster filed a compliant report constituted a "denial of access" subject to review by the Commission. *Id.* at *5 & n.32. In a footnote, the Commission suggested that FINRA wrongly delayed lifting the suspension.[3] Nonetheless, the Commission found that it

---

[3] The Commission noted that "[t]he plain text of the FINRA hearing panel order provided that, 'Sharemaster is suspended until it files the requisite annual report.'" *Id.* at *5 n.31 (emphasis added). It observed that FINRA did "not explain how the language quoted above could have

"still lack[ed] jurisdiction because the suspension has lifted and . . . there is nothing to 'affirm, modify, or set aside.'" *Id.* at \*5. The Commission declined to consider the extended suspension a "denial of access" under Section 19(d) for purposes of determining its statutory authority to review FINRA's action. It reasoned that "the extended suspension was inextricably intertwined with the October 6 FINRA hearing panel order and, as a result, it is appropriately considered a final disciplinary sanction and not a denial of access." *Id.* at \*5 n.32.

Finally, the Commission rejected numerous arguments by Sharemaster that FINRA's disciplinary sanction remained subject to review even though Sharemaster had submitted a compliant report and FINRA had lifted the suspension. *See id*. at \*5–6. Concluding that no final disciplinary sanction remained in place to act upon, the Commission dismissed Sharemaster's application for review. *Id*. at \*6.

On September 9, 2013, Sharemaster timely filed this *pro se* petition for review. We have jurisdiction pursuant to Section 25(a)(1) of the Exchange Act, 15 U.S.C. § 78y(a)(1).[4]

---

reasonably notified Sharemaster that the suspension would not lift until FINRA conducted and completed . . . a review" of the report. *Id*.

[4] Mr. Feigenbaum may proceed *pro se* because he is Sharemaster's sole proprietor. *See, e.g.*, *Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 354 n.4 (4th Cir. 2007) ("[A] sole proprietorship has no legal existence apart from its owner, and . . . an individual owner may represent his sole proprietorship in a *pro se* capacity."); *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (same).

## II.

Sharemaster challenges the Commission's decision dismissing its application for review on two grounds. First, Sharemaster argues that the Commission's "live-sanction" requirement is inconsistent with Section 19(d)(2), which directs the Commission to review any final disciplinary sanction imposed by FINRA. Second, Sharemaster contends that, even if a live-sanction requirement is read into the statute, the Commission unreasonably applied the requirement in dismissing Sharemaster's application for review. We disagree with Sharemaster's first argument, but agree with its second.

## A.  The Commission's interpretation of Section 19(d)(2) is entitled to *Chevron* deference.

Sharemaster's first argument requires us to decide whether the Commission's interpretation of Section 19(d)(2) warrants deference under the familiar two-step analysis set forth in *Chevron*, 467 U.S. 837.[5]

At step one of the *Chevron* framework, we must "determine 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the

---

[5] The preconditions to application of the *Chevron* framework are satisfied. Congress vested the Commission with general authority to administer the Exchange Act and oversee SROs through rulemaking and formal adjudication. *See, e.g.*, 15 U.S.C. § 78s(d)(2). The Commission set forth its interpretation of Section 19(d)(2) through a formal exercise of its adjudicative authority. *See City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1871–73 (2013); *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).

agency, must give effect to the unambiguously expressed intent of Congress.'" *City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1868 (2013) (quoting *Chevron*, 467 U.S. at 842–43). Our analysis begins "with the text of the statute." *Yokeno v. Sekiguchi*, 754 F.3d 649, 653 (9th Cir. 2014). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Looking to the Exchange Act, we conclude that Congress did not speak to the precise question presented: whether the Commission is authorized only to review final disciplinary sanctions that remain live. Section 19(d)(2) authorizes the Commission to review "any final disciplinary sanction" or denial of "access to services" imposed by registered SROs, but the Exchange Act does not define these terms. 15 U.S.C. § 78s(d)(1)–(2). While the Commission has by regulation defined "final disciplinary action," 17 C.F.R. § 240.19d-1(c)(1), the regulation also is silent on whether a sanction must remain in effect in order to be subject to review.[6]

---

[6] The regulation provides:

> [A] "final disciplinary action" shall mean the imposition of any final disciplinary sanction pursuant to section 6(b)(6), 15A(b)(7), or 17A(b)(3)(G) of the Act or other action of a self-regulatory organization which, after notice and opportunity for hearing, results in any final disposition of charges of:
>
> (i) One or more violations of—
>
> (A) The rules of such organization;

Section 19(d)(2)'s broader statutory context does not resolve the ambiguity created by this silence. As the Commission explained, other parts of the statute lend some support to the view that, in order to be subject to review by the Commission, a final disciplinary sanction imposed by an SRO must remain in place. Specifically, Section 19(e)(1) directs the Commission, in disposing of an application for review, to issue a declaratory judgment and, "as appropriate," "affirm," "modify," or "set aside" the sanction, or "remand" to the SRO for further proceedings. 15 U.S.C. § 78s(e)(1). This provision suggests but, as the Commission concedes, does not unambiguously confirm that Congress intended that there remain a sanction in place for the Commission to affirm, modify, or set aside.

The legislative history is similarly inconclusive. While the legislative history suggests that the term "disciplinary sanction" was intended to be "broadly defined," it is also silent on whether such a sanction must remain live in order to be subject to the Commission's review. *See S. Comm. on Banking, Housing & Urban Affairs, Securities Acts Amendments of 1975, Accompanying S. 249*, S. Rep. No. 94-75, at 24 (1975).

---

(B) The provisions of the Act or rules thereunder; . . .

17 C.F.R. § 240.19d-1(c)(1). Neither party has mentioned this regulation. The regulation might be interpreted to support the view that a "final disciplinary action" subject to review under Section 19(d)(2) includes a finding of "one or more violations" even where a coercive sanction was not imposed. However, the regulation does not compel such an interpretation.

Because the statute is "silent or ambiguous with respect to the specific issue" addressed by the Commission—whether the Commission has a statutory duty to review a "final disciplinary sanction" that is moot or, in the Commission's words, no longer "live"—we find that the first step of *Chevron* is satisfied and we move on to step two. *See Chevron*, 467 U.S. at 843.

Step two of the *Chevron* framework requires us to determine "whether the agency's [interpretation] is based on a permissible construction of the statute." *Id.* If the agency's interpretation is not in conflict with the statute and represents a "reasonable policy choice for the agency to make," we must defer to it. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005).

For the same reasons that we found the statute ambiguous, we conclude that the Commission's interpretation of Section 19(d)(2) to require a sanction to remain in place in order to be subject to review is permissible. Again, the Exchange Act is silent on this issue and Section 19(e)(1) can be read to require that a disciplinary sanction remain in place for the Commission to act upon.

The Commission's asserted policy considerations supporting its interpretation of the scope of its authority are reasonable. As mentioned, the Commission justified a live-sanction requirement by analogizing to doctrines applicable to Article III courts. The Commission explained that its live-sanction requirement finds support in the rule that voluntary compliance with a civil contempt order generally precludes appellate review. *See SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (recognizing that "the purging of the contempt ordinarily renders the controversy moot"). The Commission

also explained that a live-sanction requirement furthers its interest in avoiding unwarranted advisory opinions and thereby conserving its limited resources. Analogizing to Article III standing doctrine, the Commission further explained that requiring a live sanction would help "ensure[] meaningful review because the parties will have a substantial and concrete interest in the outcome of the proceedings." *Sharemaster*, 2013 WL 4647204, at *5. These policy considerations are without doubt reasonable.

Indeed, if an SRO such as FINRA imposed a disciplinary sanction but then fully retracted the sanction by, for example, setting aside a suspension and returning any fine levied, it would make little sense for the Commission to proceed with review. This common-sense observation highlights the reasonableness of the Commission's view that it need not review moot sanctions. In fact, it is reasonable for the Commission to assume that Congress legislated against the backdrop of mootness and standing doctrines in defining the scope of the Commission's quasi-judicial review authority. *See City of Arlington*, 133 S. Ct. at 1868 (noting that Congress should be presumed to legislate with stable background rules in mind). While these doctrines apply to Article III courts, analogous doctrines are also well established in the context of quasi-judicial agency adjudications. *See, e.g.*, *Or. Cedar Prods. Co.*, 119 IBLA 89, 92 (1991) ("[T]he [Interior Board of Land Appeals] decides actual controversies and avoids giving opinions on moot questions or abstract propositions.").

We hold that the Commission's interpretation of Section 19(d)(2) as only permitting review of "live" disciplinary sanctions is permissible under the statute and based on

reasonable policy considerations. We therefore defer to the Commission's interpretation.

## B. The Commission unreasonably decided that the disciplinary sanction imposed by FINRA on Sharemaster was no longer live.

Our inquiry does not end with our conclusion that the Commission's interpretation of Section 19(d)(2) is entitled to *Chevron* deference. The question remains whether the Commission's application of its live-sanction requirement to dismiss Sharemaster's application for review was reasonable and consistent with applicable law. Whether framed as going to the scope of the Commission's review authority or the application of its delegated authority, "the underlying question [is] the same": Did the Commission unreasonably refuse to review Sharemaster's case? *See City of Arlington*, 133 S. Ct. at 1870. We find that it did.

Before the Commission, Sharemaster offered numerous reasons why the disciplinary sanction FINRA imposed remained "live" after Sharemaster submitted a compliant report and FINRA lifted the suspension. One such reason was that Sharemaster was still stuck with a $1,000 penalty for not timely filing a compliant annual report. In its order, the Commission offered two reasons why this financial loss did not preserve FINRA's review authority after the suspension was lifted.

First, the Commission suggested that the entire $1,785 sum may have represented the "cost" of pursuing a hearing before FINRA, rather than a disciplinary fine. *Sharemaster*, 2013 WL 4647204, at *6 n.37. However, the Commission's own dismissal order and briefing before this court undermine

this position. In its dismissal order, the Commission stated only that $1,000 of the $1,785 that FINRA ordered Sharemaster to pay "*appears* to be another example of costs assessed as part of the FINRA proceedings." *Id*. (emphasis added). In its answering brief on appeal, the Commission conceded that this $1,000 sum was "apparently [a] late fee."[7] We agree. FINRA's decision plainly suggests that FINRA imposed a $1,000 penalty on Sharemaster, in addition to taxing a $750 "administrative fee" and a $35 transcript fee.

Second, the Commission stated in its dismissal order that, "even if this amount did not represent an assessment of costs, we would still . . . lack the power to order FINRA to repay Sharemaster." *Id*. at *6 n.37. The Commission did not explain why this is so, but referenced footnote 36 of its order. That footnote, in turn, references two Commission decisions that offer no support for the Commission's position. The first decision held in relevant part that the Commission is "not authorized . . . to award [monetary] damages." *Beatrice J. Feins*, Exchange Act Release No. 33374, 1993 WL 538913, at *3 n.14 (Dec. 23, 1993). This decision does not support the Commission's position because Sharemaster does not seek damages. The second Commission decision stated that "Exchange Act Section 19 does not appear to authorize the setting aside of [an SRO's] Fees assessment or authorize 'remission' of the Fees" charged in connection with a hearing before an SRO. *Marshall Fin., Inc.*, Exchange Act Release No. 50343, 2004 WL 2026518, at *2–3 & n.21 (Sept. 10,

---

[7] In response to our request for supplemental briefs, the Commission was unable to improve on its assertion that the amount "includes an administrative fee of $750.00 and the cost of the hearing transcript" and that a "[n]o further breakdown was provided." Sept. 29 2016 Letter Brief at 2.

2004). This decision does not lend the Commission support because, in addition to charging $785 in administrative fees associated with the hearing, FINRA imposed a $1,000 fine on Sharemaster possibly for failing to timely file a compliant annual report.

The imposition of a fine is a "disciplinary sanction" under both FINRA's rules and the Commission's precedent. *See* FINRA Rule 8310 (listing "fine" as a disciplinary sanction); 17 C.F.R. § 240.19d-1(c)(2) (acknowledging that a sanction may "consist[] of a fine"); *Tague Sec. Corp.*, Exchange Act Release No. 18510, 47 SEC 743, 1982 WL 32205, at *2 (Feb. 25, 1982) (listing "expulsion, suspension, fine or censure" as final disciplinary sanctions). Calling the $1,000 a "late fee" is of no moment.[8] Regardless of its label, it appears to be a penalty imposed for not timely filing an annual report prepared by a PCAOB-registered accountant. It is not part of the separately ledgered "administrative fee" that FINRA taxed to Sharemaster for pursuing an administrative appeal. The fine became a "final" disciplinary sanction when Sharemaster exhausted remedies before FINRA. The sanction remained "live" even after the suspension lifted because the fine was not canceled and the money was not remitted to Sharemaster.

Unlike the sunk transactional costs of pursuing an administrative appeal, if Sharemaster prevails on the merits

---

[8] Such an argument reads "like the caption 'This is not a pipe' below Magritte's famous painting of a pipe." *Cuero v. Cate*, — F.3d —, 2016 WL 3563660, at *4 n.9 (9th Cir. June 30, 2016). Of course, Magritte's painting was not a pipe but only a painting of one, whereas a $1,000 penalty for not complying with applicable rules is nothing other than a fine.

of his argument (that he was not required to use a PCAOB-registered accountant), the Commission would be compelled to set aside the $1,000 fine because Sharemaster, in fact, timely complied with securities laws. The Commission's view that it lacks authority to order FINRA to "repay" the $1,000 conflicts with the Exchange Act. The Commission has authority to "act upon" a monetary sanction pursuant to Section 19(d)(2) and 19(e). Section 19(e)(1) provides that the Commission must "set aside" such a sanction if it was incorrectly levied. 15 U.S.C. § 78s(e)(1). Moreover, Section 19(e)(2) makes clear that the Commission has authority to "cancel, reduce, or *require the remission* of such sanction," even if the fine was correctly levied. *Id*. § 78s(e)(2) (emphasis added).[9]

Given that the Commission is empowered to "undo what has already been done," the monetary sanction is not moot. *Nw. Res. Info. Ctr. v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1060, 1069 (9th Cir. 1995). The fact that $1,000 might be characterized as a less-than-substantial amount is without consequence. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). Moreover, this amount of money is substantial to Sharemaster's small business.

---

[9] The dissent engages in extensive independent research to bolster its conclusion that the $1,000 charge—"this mystery document" (dissent at page 30)—is most likely not a sanction. Perhaps on remand, the Commission will make such a showing, which it has so far failed to do. We hold only that on this record, the Commission has not shown that this controversy is moot.

The government contends, and our dissenting colleague would hold, that Sharemaster waived any argument based on the $1,000 fine by not raising it in its briefs. Ordinarily, we will not consider "matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992). The general waiver rule applies even to non-lawyers like Sharemaster who proceed *pro se* in the face of a complicated statutory scheme. *See Wilcox v. Comm'r*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988). However, we make an exception to the general rule (1) for "good cause shown" or "if a failure to do so would result in manifest injustice," (2) "when [the issue] is raised in the appellee's brief," or (3) "if the failure to raise the issue properly did not prejudice the defense of the opposing party." *Ullah*, 976 F.2d at 514 (internal citation and quotation marks omitted); *see also United States v. Salman*, 792 F.3d 1087, 1090 (9th Cir. 2015), *cert. granted in part*, 136 S. Ct. 899, 193 L. Ed. 2d. 788 (2016), and *aff'd*, 137 S. Ct. 420 (2016).

The second and third exceptions apply here. Sharemaster raised the argument in front of the Commission, and the Commission addressed the merits of Sharemaster's argument in its decision below and again in its answering brief on appeal. At oral argument, Sharemaster stated that it did not intend to waive this issue. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1072 (9th Cir. 2012) (finding no prejudice where parties had opportunity to brief the issue); *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 619 n.4 (9th Cir. 2006) (considering an issue not raised in an opening brief where an opponent had an opportunity to address the issue at oral argument). In addition, to ensure that our consideration would not prejudice either side, we requested and received supplemental briefs on this issue. We further note that it was

the government that called the $1,000 a "late fee" in its brief; these words were not put in its mouth by Sharemaster.

Sharemaster makes several additional arguments in support of the view that the disciplinary sanction remains a live injury capable of being redressed. For example, Sharemaster contends that the Commission has authority to retroactively shorten Sharemaster's suspension and direct FINRA to reinstate Sharemaster to membership *nunc pro tunc*, which Sharemaster alleges would allow it to collect commissions that would have been paid it if not for the suspension. Sharemaster also argues that, even if the sanction is no longer live, it is capable of repetition but evading review and thus should qualify for an exception to the live-sanction requirement. We need not reach these arguments or Sharemaster's due process claim because we conclude that the disciplinary sanction imposed by FINRA remained live based on the $1,000 fine. Accordingly, Sharemaster's challenge to FINRA's final disciplinary sanction is subject to review by the Commission pursuant to Section 19(d)(2). We leave it to the Commission to determine on remand whether, if Sharemaster prevails on the merits of its argument regarding the applicability of the PCAOB-registered-accountant requirement, the Commission may direct FINRA to reinstate Sharemaster *nunc pro tunc*.

## III.

We hold that the Commission's interpretation of Section 19(d)(2) as limiting its review authority to final disciplinary sanctions that remain live is entitled to *Chevron* deference. However, we hold that the Commission unreasonably decided that the monetary penalty that FINRA imposed on

Sharemaster was not a sanction and thus not a live disciplinary sanction.

Sharemaster's *pro se* petition for review is **GRANTED**. Each side shall bear its own costs of this appeal.

---

N.R. SMITH, Circuit Judge, concurring in part and dissenting in part:

Because the majority resolves this case on grounds not raised by the parties and not supported by the record, I must dissent. That said, the majority correctly concludes that the Securities and Exchange Commission's interpretation of Securities Exchange Act Section 19(d)(2)—that the Commission's review authority under that section is limited to final disciplinary sanctions that remain "live"—is entitled to *Chevron* deference.[1] However, the majority thereafter speculates as to the nature of costs assessed against Sharemaster in order to invent a live sanction and preserve the Commission's review authority. It is that part of the decision I cannot join.

## I.

Sharemaster sought the Commission's review of a Financial Industry Regulatory Authority (FINRA) order suspending it from FINRA membership for failure to file a compliant annual financial report. Under the Commission's interpretation of Section 19(d)(2), its review of the FINRA

---

[1] Thus, I concur in Part II.A of the majority opinion.

order was limited to final disciplinary sanctions that remained live. The only disciplinary sanction described in the FINRA order was a suspension. After concluding that Sharemaster was in violation of the Exchange Act, the FINRA order states—"Accordingly, Sharemaster is suspended until it files a[] [compliant annual report]." The FINRA order did not separately impose any fines on Sharemaster. Indeed, the word "fine" is not used anywhere in the FINRA order. Sharemaster subsequently opted to comply with the FINRA order by filing a compliant annual report, and FINRA lifted the suspension. Therefore, the only sanction imposed by the FINRA order was no longer live and, applying the Commission's interpretation of Section 19(d)(2), the Commission is without jurisdiction. Case closed.

But no: Determined to find a live sanction, the majority invents one. The majority notes that the FINRA order also required Sharemaster to pay hearing costs. The majority speculates that the $1,785 ordered by FINRA included "a $1,000 penalty." Maj. Op. 9. It then concludes that this "penalty" (which it also labels as a "fine") amounts to a live sanction that preserves the Commission's jurisdiction to review the FINRA order. Maj. Op. 19–22. Without persuasive argument by the parties on this second issue (thus, left only to speculation), the majority presses on to address and decide it, *sua sponte* adopting a position neither raised before us by the parties nor supported by the record.

## II.

### A.

As an initial point, Sharemaster clearly did not raise the issue on which the majority rests its decision. The only

sanction referred to by Sharemaster (or FINRA or the Commission) was the suspension. It is undisputed that Sharemaster did not argue (in either its opening or reply brief)[2] that FINRA sanctioned it with a $1,000 fine. Even in the face of persistent, leading prompts from the majority at oral argument, Sharemaster did not pursue this position. Our precedent is well established regarding such circumstances. "[O]n appeal, arguments not raised by a party in its opening brief are deemed waived." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). This waiver rule—which the majority acknowledges applies to *pro se* litigants, such as Sharemaster, just as it applies to parties represented by counsel, Maj. Op. 23—should have ended our inquiry. *See Wilcox v. Comm'r of Internal Revenue*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988). The majority essentially admitted as much when, in response to the Commission's waiver arguments at oral argument, the majority acknowledged that the Commission was in a difficult position, because, if Sharemaster "were not *pro se*, we would be holding [it] quite strictly to th[ose] kinds of waiver rules."

However, the majority was undeterred. Though the issue seemed to be waived, the majority resurrected it by ordering

---

[2] In its answering brief, the Commission pointed out that Sharemaster's opening brief did not argue that FINRA's imposition of costs preserved the Commission's review jurisdiction. Put on notice that this argument was absent, Sharemaster still did not attempt to belatedly raise it in its reply brief.

In an exchange that highlights the majority's *sua sponte* approach to deciding this case, Sharemaster never attempted to argue that FINRA had sanctioned it by imposing a fine until, at oral argument, this panel explained such argument to Sharemaster and asked, "you're not waiving that, are you?"

supplemental briefing, saving Sharemaster from an adverse ruling on the issue of waiver. *See United States v. Salman*, 792 F.3d 1087, 1090 (9th Cir. 2015), *cert. granted in part*, 136 S. Ct. 899 (2016), *and aff'd*, 137 S. Ct. 420 (2016); *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992). Disappointing to the majority, the additional briefing did not provide any persuasive arguments to strengthen the majority's conclusion as to the merits.

**B.**

We owe deference to the Commission's finding that no part of the $1,785 FINRA-imposed costs was a sanction. "If the evidence is open to more than one interpretation, we must uphold the Commission's findings." *Alderman v. S.E.C.*, 104 F.3d 285, 288 (9th Cir. 1997). The Commission's findings are conclusive, if supported by substantial evidence. 15 U.S.C. § 78y(a)(4); *Davy v. S.E.C.*, 792 F.2d 1418, 1421 (9th Cir. 1986). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Davy*, 792 F.2d at 1421 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (quotation marks omitted). In reviewing the Commission's order to determine if its findings are supported by substantial evidence, we must "examine the [record] evidence with a 'deferential eye.'" *Ponce v. S.E.C.*, 345 F.3d 722, 728 (9th Cir. 2003) (quoting *Alderman*, 104 F.3d at 288).

As noted, the only sanction the FINRA order imposed was Sharemaster's suspension. The order described the $1,785 charge as a "cost." And nowhere did the FINRA order describe any portion of this amount as a "fine," "late fee," "penalty," or "sanction." The only reference in the record to the possibility of any financial penalty is found in a single

footnote in the Commission's order dismissing the proceedings below. This footnote explained that (1) Sharemaster contended (in the proceedings before the Commission) that "FINRA assessed and received payment of a $1,000 fine against Sharemaster," and (2) the only support Sharemaster provided for this argument was an unspecified document, listing a $1,000 "late fee" against Sharemaster. However, noting that Sharemaster failed to explain the relevance of its cited document, the Commission indicated that there was insufficient evidence in the record to support this argument. Instead, it rejected Sharemaster's position and found that the $1,000 charge reflected in the document "appears to be another example of costs."

The FINRA order provided that Sharemaster was "ordered to pay costs of $1,785.00, which include[d] an administrative fee of $750.00 and the cost of the hearing transcript." By identifying only two items that make up the hearing costs (an administrative fee and a transcript cost) and expressly stating that the administrative fee was $750, the plain language of the order leaves no room for argument that the balance of the hearing costs ($1,035) was attributable to anything but the cost of the transcript.

Examining the record with a deferential eye, as we are required to do, there is clearly substantial evidence to support the Commission's finding that no part of the $1,785 in costs was a sanction. Therefore, the finding that FINRA did not impose any penalty other than the suspension is conclusive, and we should give it deference.

Relying solely on the single reference in the Commission's order to a $1,000 late fee, the majority speculates that the $1,785 in costs ordered by FINRA

consisted of a $750 hearing cost, a $1,000 "penalty" or "late fee," and a $35 hearing-transcript cost. Maj. Op. 19–20. Despite the majority's false bravado that the FINRA order "plainly" imposed a $1,000 penalty on Sharemaster, Maj. Op. 19–20, this conclusion is not supported by the record. The majority claims that the Commission has described some portion of the $1,785 costs as a "late fee." This is incorrect. The Commission's order below does no more than note that Sharemaster cited to a document listing a $1,000 late fee.[3] Here on appeal, Sharemaster failed to provide this mystery document, to explain its relevance, or even to refer to it. Thus, compared to the Commission, we find ourselves at a disadvantage to ascertain the nature of the supposed $1,000 charge. We do not know whether this charge should be categorized as a fine. We do not know whether this $1,000 was part of the $1,785 costs imposed by FINRA or whether the $1,000 was ever paid. Further, if this charge were a late fee, we do not know why the late fee was assessed. We should, then, give deference to the Commission's finding that the $1,785 in costs did not include any type of penalty, because that finding is supported by substantial evidence.

In addition, if the cost of the transcript were anything other than $35, the majority's breakdown of the costs and its argument that FINRA imposed a $1,000 fine cannot be correct. The majority's "presumption" that the "cost of the hearing transcript" was $35 has no basis in the record. That

---

[3] The only reference the Commission made in its appellate briefing to a "late fee" was (1) to cite the footnote in which the Commission below rejected Sharemaster's late-fee argument and (2) to argue that Sharemaster waived this argument by failing to raise it on appeal. The Commission's use of the term "late fee" in its briefing was clearly only a reference to the argument Sharemaster made below and not a concession that Sharemaster was actually charged a late fee.

figure is entirely absent from the record and briefing, and there is no evidence to support the conclusion that the transcript could have cost so little. The record does not reveal the precise length of the transcript; however, citations in the record establish that the transcript was, at a minimum, 148 pages. That quantity, at the cost presumed by the majority, would come out to just over $00.04 per page. While those involved in appealing this order may wish they could order transcripts at such a price, there is no basis to support it. For example, FINRA's website lists the transcript cost for hearings in one of its offices as $4.50 per page. *Dispute Resolution Regional Offices and Hearing Locations*, finra.org, http://www.finra.org/arbitration-and-mediation/ southeast-regional-office-guide (last visited January 4, 2017). Our own court authorizes a rate of $3.65 per page.[4] 28 U.S.C. § 753(f) (providing that the United States Judicial Conference limits the transcript rates federal courts may charge); *Federal Court Reporting Program*, Maximum Transcript Rates, http://www.uscourts.gov/services-forms/federal-court-reporting-program (last visited January 4, 2017) (providing transcript rate limits); Ninth Cir. R. 10-3.1(e) (incorporating rates established by United States Judicial Conference). Unless the hearing transcript were only eight to ten pages (which is far from true), a necessary premise to the majority's argument (that the transcript cost was $35) simply fails. Considering a realistic cost of the transcript, the majority's position cannot be reconciled with the record.

This conclusion is bolstered by reviewing decisions from other disciplinary actions in which FINRA ordered the respondent to pay hearing costs and expressly stated that the

---

[4] In fact, our court actually authorizes rates ranging up to $7.25 per page for expedited orders.

balance of the hearing costs (after the administrative fee) made up the transcript costs. *See Denise M. Olson*, Disciplinary Proceeding No. 2010023349601, 2013 WL 2146648, at *6 (FINRA Hearing Panel Jan. 4, 2013) (imposing "costs in the amount of $1909.71, which includes an administrative fee of $750 and hearing transcript costs of $1,159.71"); *Dame Cisse*, Disciplinary Proceeding No. 2009019297801, 2012 WL 1906576, at *6 (FINRA Hearing Panel Apr. 2, 2012) ("costs in the amount of $1659.15, which includes an administrative fee of $750 and hearing transcript costs of $909.15"); *Howard Braff*, Disciplinary Proceeding No. 2007011937001, 2010 WL 5129561, at *5 (FINRA Hearing Panel May 19, 2010) ("costs in the amount of $1,856.80, which includes an administrative fee of $750 and hearing transcript costs of $1,106.80"); *Richard A. Neaton*, Disciplinary Proceeding No. 2007009082902, 2009 WL 2777331, at *8 (FINRA Hearing Panel June 5, 2009) ("assessed costs in the total amount of $1861.30, consisting of a $750 administrative fee and an $1111.30 transcript fee"); *CMG Institutional Trading, LLC*, Disciplinary Proceeding No. 2006006890801, 2008 WL 5385253, at *13 (FINRA Hearing Panel Oct. 14, 2008) (assessed hearing costs of "$2,573.44, consisting of a $750 administrative fee and a $1,823.44 transcript fee"); *Avidan Danny Fishman*, Disciplinary Proceeding No. 2007008812801, 2008 WL 5385255, at *7 (FINRA Hearing Panel Sept. 18, 2008) ("ordered to pay Hearing costs of $2,057.13, which includes a $750 administrative fee and a $1,307.13 transcript fee"); *John M. E. Saad*, Disciplinary Proceeding No. 2006006705601, 2008 WL 5385256, at *5 (FINRA Hearing Panel Aug. 19, 2008) ("assessed Hearing costs in the total amount of $2,080, consisting of a $750 administrative fee and a $1,330 transcript fee").

Reviewing the record with a deferential eye, as we are required to do, there is clearly substantial evidence to support the Commission's finding that no part of the $1,785 in costs was a sanction.

## III.

Judges are not advocates. Thus, when an aggrieved party seeks review from our court, we require the party to "specifically and distinctly" explain what issues require our review. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). The majority's opinion ignores this fundamental policy and, instead, attempts to save Sharemaster's case by basing its decision on an issue Sharemaster did not raise. The record before this court cannot justify granting Sharemaster's petition, and this case should be closed.